IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 5, 2007

**STATE OF TENNESSEE v. JAMES TAYLOR, JR.**

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7964     Joseph H. Walker, III, Judge**

---

**No. W2006-02085-CCA-R3-CD  - Filed November 14, 2007**

---

The defendant, James Taylor, Jr., was found guilty by a Lauderdale County jury of aggravated assault (Class C felony) and assault (Class A misdemeanor).  He was sentenced to six years for his aggravated assault conviction and to eleven months and twenty-nine days for his assault conviction.  On appeal, he contends that: (1)  the evidence was insufficient to support either of his convictions; (2) the trial court erred in failing to dismiss the aggravated assault indictment because it did not allege the type of deadly weapon used by the defendant; (3) the trial court should have excluded testimony that the defendant was the subject of a restraining order; and (4) his sentence was improper.  After review, we conclude that no reversible error exists and affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Gary F. Antrican, District Public Defender, and Kari I. Weber, Assistant Public Defender, for the appellant, James Taylor, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Mike Dunavant, District Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case involves the defendant's attack on a father and his daughter on December 30, 2005.  At trial, the father testified that, when the defendant arrived at his home, he asked the defendant to leave before the defendant exited the vehicle he was driving.  The father said that the defendant pushed past him and entered his house.  The defendant went to the room where the daughter was located and began to argue with her.  The defendant then came out of that room, again pushed the father aside, retrieved a steak knife, and went outside where he attempted to start the daughter's Jeep

with the knife. The father said that the defendant started cutting him with the knife when he tried to take it away from him. The defendant also hit the father in the face with a lug wrench.

The father testified the daughter was injured that night by the defendant. As a result, both the father and daughter were hospitalized, and the father had no doubt that the defendant was responsible for causing his injuries. The State introduced six photographs into evidence through this witness. Three photographs depicted the injuries inflicted upon the father by the defendant, and three photographs depicted the injuries inflicted upon his daughter as a result of the defendant's attack. During cross-examination, the father said the daughter asked him to call 9-1-1, but he was unable to make the phone call because the defendant was holding the telephone. He said that his daughter came out of the house carrying a lug wrench while the defendant was attempting to start the Jeep. The father said that the defendant cut him with the knife each time he reached for the defendant. He said the defendant grabbed the wrench from his daughter and hit him in the face with it.

Next, the father's sister testified that, when she arrived at the father's residence, she found the victims covered in blood and the police present. Both father and daughter told her that the defendant had caused their injuries. She said the father had to spend approximately thirty days in the hospital and the daughter had to have a plate put in her head.

The next witness, the daughter, testified that she was hit in the head and that surgery was required to repair her wounds. She could not recall who struck her. She only knew that she was hit in the head and woke up on the couch. She thought she was injured immediately upon exiting her car as she arrived at her father's residence. She testified that she had been involved with the defendant for a long time and acknowledged her love for the defendant. She believed that she and the defendant had been "hanging out" earlier on the day of the incident, but she could not recall any arguments between them. She testified that she left the defendant at his mother's residence and drove her Jeep to her father's residence, which was approximately ten to fifteen minutes away.

Next, the 9-1-1 operator testified that he received a call from the father's residence at or about 8:17 p.m. on the date of the incident and, in turn, advised law enforcement officers that an assault had occurred at the residence. He said the call was placed by a hysterical female. The phone call was disconnected, and he called the phone number back. At that time, the daughter answered the telephone and indicated that she had been assaulted by the defendant. She said she was bleeding heavily from the face and head area and was in need of an ambulance. Later in the call, the daughter indicated that her father had also been assaulted and was in need of an ambulance.

On cross-examination, the operator testified that he stayed on the phone with the daughter until law enforcement arrived. He said he had as much of an ongoing conversation with her as possible and indicated that the daughter said she had been drinking that evening. He said the daughter also volunteered that she had taken three Hydrocodone. At the conclusion of the operator's testimony, the State rested its proof.

The defense called Officer Reed, a six-year veteran of the Lauderdale County Sheriff's Department and the first officer to arrive on the scene. Officer Reed testified that, on the night of the incident, he spoke with the father who indicated that the defendant had assaulted him. The officer said that was basically all the information he could get from the father. The officer also spoke with the daughter. Officer Reed said he was responsible for writing out the affidavit of complaint against the defendant and recalled that the father said the defendant took a knife from the house and used it to pick a lock on a vehicle. The father also said that the defendant hit both victims with a four-way lug wrench. The officer said that his affidavit of complaint contained no mention of the defendant using the knife to cut the father. He said there was no mention of the knife in any of the father's prior statements. The knife, which was found on the porch at the residence, showed no trace of blood or other remarkable feature. The officer also said that no blood was found on the lug wrench but that it was not tested for blood or fingerprints.

On cross-examination, Officer Reed said he was aware of prior altercations between the defendant and the daughter. He said there was a "no contact" order for the defendant to be off of the property. Officer Reed said both victims identified the defendant as the cause of their injuries. Following the officer's testimony, the defense concluded its proof.

The jury found the defendant guilty as charged. Later, the trial court conducted a separate sentencing hearing for the defendant.

During the sentencing hearing, the father testified that his recommendation for the defendant's sentence was to "let him rot in hell, if you want to" and that the defendant should "be stomped the way he stomped [him]." He further requested that the defendant be held responsible for payment of medical bills stemming from the assault. During cross-examination, the father said he was on medication prior to the assault and that he was on additional medication due to the injuries he sustained in the assault.

Next, the officer responsible for compiling the presentence report testified that the defendant had prior felony convictions in Arkansas, but the officer did not have certified copies of those judgments. Additionally, the defendant had misdemeanor convictions in Tennessee, including ten convictions in Lauderdale County. He said the defendant tested positive for both cocaine and marijuana when he was taken into custody but has had clean drug screens since that time. The defendant advised the officer that, if he was released, he would have no contact with the victims. The defendant had previously been hospitalized for mental health issues and received disability payments.

The final witness to testify during the sentencing hearing was the mother of the defendant. She said that the defendant has to stay on his medicine or "he just goes off." He has a history of drinking and taking his medicine at the same time. She said that, if he was allowed to come back and live with her, she would see that he took his medicine properly and go to counseling if necessary.

Following argument, the court found the defendant to be a Range I, standard offender with multiple convictions in addition to what was necessary to establish the appropriate range. The court found no mitigating factors, and the defendant inflicted serious bodily injury to his victims. The court sentenced the defendant to six years for his conviction of aggravated assault and to eleven months and twenty-nine days at seventy-five percent for his conviction of assault. The court found that this was not a proper case to grant relief from incarceration, either through alternative sentencing or probation.

Analysis

First, the defendant contends that the evidence was insufficient to sustain the convictions of aggravated assault and assault. The crux of his argument is that the testimony of the father is not credible. To support his position, he contends that the father gave conflicting statements and was taking "various medications" at the time of the incidents. He argues that the victims' proof of identification was questionable and was not established beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn from circumstantial evidence by the trier of fact. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. In State v. Grace, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

Tennessee Code Annotated section 39-13-102(a) states:

A person commits aggravated assault who:
    (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
        (A)    Causes serious bodily injury to another; or
        (B)    Uses or displays a deadly weapon[.]

Tennessee Code Annotated section 39-13-101(a) provides:
A person commits assault who:
        (1)    Intentionally, knowingly or recklessly causes bodily injury to another;
        (2)    Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
        (3)    Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Here, the evidence established that the defendant cut the father with the knife, injuring his hand. The evidence further established that the defendant struck the father in the face with a lug wrench, causing serious injury that required a hospital stay of approximately thirty days. The testimony also established that, at the hands of the defendant, the daughter suffered injuries so severe that surgery was necessary. The evidence is sufficient to support the jury's findings that the defendant committed an aggravated assault on the father and an assault on the daughter.

Next, the defendant contends that the indictment against him was flawed because it did not specifically state the deadly weapon he used in committing the aggravated assault against the father. He argues that the absence of the specific weapon renders the indictment defective, and he asks this court to dismiss the indictment with prejudice. An indictment is valid if it "provides sufficient information (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court with an adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997).

The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. In no case are the words "force and arms" or "contrary to the form of the statute" necessary.

Tenn. Code Ann. § 40-13-202.

Our supreme court has previously stated that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both the constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000). An indictment satisfied the constitutional and statutory requirements and sufficiently charged the offense of aggravated assault where all of the elements of the offense – intentional and knowing mens rea, the commission of an assault, and the use or display of a deadly weapon – were alleged. Id. at 302. The

court held that the State is not required "to specify in the indictment the precise means or theory by which the State intends to establish each element of the offense." Id. By alleging all of the elements of aggravated assault, the indictment in Hammonds gave the defendant notice of the charges against him. Here, the indictment contained the following language: ". . . that James Taylor, Jr. on or about December 30, 2005, in Lauderdale County, Tennessee, and before the finding of this indictment, did unlawfully, feloniously, and knowingly cause bodily injury to Bobby Haslip by the use of a deadly weapon, in violation of [Tennessee Code Annotated section] 39-13-102 . . . ."

Following Hammonds, we conclude that the indictment in the instant case was not defective. The indictment alleged the elements of aggravated assault, provided the basis for a proper judgment, listed a specific date and names of the victims, utilized language from the proper statute, and referred to the statute. We conclude that the trial court did not err in refusing to dismiss the indictment.

Next, the petitioner contends that the trial court erred in allowing testimony to be introduced at trial regarding the existence of a restraining order against him, protecting the victims. Specifically, he contends that the testimony constituted evidence of a prior bad act in violation of Tennessee Rule of Evidence 404(b). To support his conclusion, the defendant notes that the trial court instructed the defendant, prior to trial, that it would rule on the restraining order issue when it was presented during the trial. When the testimony was elicited from the father, the defendant objected and was subsequently overruled without conducting a hearing outside the jury's presence. The defendant argues that this constituted reversible error and deserves a remand.

The language the defendant contests occurred during the direct examination of the father. When counsel for the State asked the father how he knew the defendant, he replied, "He lives – he was living with my daughter until we had to get a restraining order." At which time, counsel for the defendant objected and asked the court for permission to approach the bench. The court overruled the objection without proceeding further.

The State argues that the mere fact that the victims had a restraining order against the defendant did not constitute evidence of a prior bad act on the defendant's part, as contemplated by Tennessee Rule of Evidence 404(b), because there was no mention of any bad act on the defendant's part. Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. Our review of the record does not show that the State was trying to introduce evidence of the existence of the restraining order. Therefore, any mention of the restraining order should be deemed harmless. The record reflects that the State did not seek to introduce any circumstances relating to the restraining order into evidence. In fact, the State did not ask the victim any questions about the restraining order but, instead, focused only on the events that gave rise to the underlying charges. We find no evidence in the record that the jury convicted the defendant of these crimes based on the passing reference to a restraining order. Any error that may have resulted from the admission of the witness's brief statement about the existence of a restraining order has not been shown to have affected the outcome of the case. Therefore, the defendant is not entitled to any relief on this issue.

Next, the defendant argues that the trial court improperly sentenced him to the maximum of six years after determining that he had a previous history of criminal convictions. A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). When a defendant appeals the length, range, or manner of service of his or her sentence, it is this court's duty to conduct a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).

The weight given to each enhancement or mitigating factor is in the discretion of the trial court, assuming that the trial court has complied with the purposes and principles of the sentencing act and that its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002). The statutes prescribe no particular weight for an enhancement or mitigating factor. State v. Gosnell, 62 S.W.3d 740, 750 (Tenn. Crim. App. 2001). "[A] defendant's 'sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years.'" State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001) (quoting State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996)).

The defendant had prior convictions, including four convictions for felony theft in Arkansas from 1985 to 1987. He had prior assault convictions in Lauderdale County in 1999 and 2002. He also had ten additional convictions from 1989 to 2005, eight of which occurred in Lauderdale County.

In general, the enhancement factor for a prior criminal record has been previously afforded great weight by this court. Here, the defendant's prior criminal record should be weighed heavily because of both the nature and the number of his convictions. On two previous occasions, he had been convicted of assault in the trial court from which the present convictions arise. This factor is sufficient to elevate his sentence to the maximum ceiling and to firmly embed his sentence in the ceiling. See State v. Braden, No. 01C01-9610-CC-00457, 1998 Tenn. Crim. App. LEXIS 213, at *24 (Tenn. Crim. App. at Nashville, Feb. 18, 1998). Our review of the record reflects that the trial court acted within its discretion in imposing the six-year sentence. Therefore, the defendant is not entitled to relief on this issue.

In the defendant's final issue, he argues that the trial court improperly denied him probation. Tennessee Code Annotated section 40-35-303(a) provides that a defendant is eligible for probation if the actual sentence imposed is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. The trial court is to automatically consider probation as a sentencing alternative for an eligible defendant, but the defendant bears the burden of proving his suitability for probation. Tenn. Code Ann. § 40-35-303(b). No criminal defendant

is entitled to probation as a matter of law.  <u>Id.</u>, Sentencing Commission Comments; <u>State v. Davis</u>, 940 S.W.2d 558, 559 (Tenn. 1997).

In considering whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record, background, social history, and present condition; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment.  <u>State v. Souder</u>, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

Here, the trial court imposed a sentence of six years, making the defendant eligible for probation.  The trial court did not state on the record its reasons for denying probation but merely concluded that it was "not a proper case to grant relief from sentence at this time, either through alternative sentencing or probation."  The State argues that the record demonstrates the defendant's failure to meet his burden of establishing suitability for probation.  We agree.  The sentencing hearing revealed the defendant's numerous prior convictions.  The defendant was on medication and continued to drink alcohol.   The injuries suffered by both victims were severe enough to warrant lengthy hospital stays and surgeries.  The record fails to demonstrate the defendant to be a suitable candidate for probation.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE